STATE of Missouri,
Plaintiff-Respondent,

v.

John BARTEAU, Defendant-Appellant.

No. 47126.

Missouri Court of Appeals,
Eastern District.

Jan. 8, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
March 26, 1985.

Application to Transfer Denied
April 30, 1985.

**574**

Michael J. Gorla, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Carrie D. Francke, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

STEWART, Judge.

Defendant was convicted by a jury of assault in the first degree, a Class A felony. He was sentenced by the court as a prior offender to twenty years imprisonment. We affirm.

We review the facts in the light most favorable to the state. The victim who worked a night shift left work at about 2:00 a.m. and drove toward his home in his 1976 Camaro. As he exited Highway 270 onto New Halls Ferry Road, a maroon Lincoln Continental driven by defendant pulled up very close behind him. Defendant tailgated the victim as the victim proceeded on to Pershall Road. The victim pulled into the lane to the left to permit defendant to pass on his right. As defendant pulled alongside, the victim saw that defendant had a gun in his hand. When the victim saw the gun he slowed his car so that the defendant could get ahead of him.

The defendant got about 200 feet ahead of the victim and came to a stop sign where he waited even though there was no other traffic near the intersection. The victim was apprehensive and slowed as if to stop but as he got to the intersection he accelerated into the intersection and made a left turn. While making the turn he heard shots. Defendant engaged in rapid fire; that is he fired as fast as he could pull the trigger without setting up for his target. There were four or five shots fired. The victim stopped to check his car and saw the defendant's car make a right turn and speed away. Another motorist stopped and told the victim that he heard a popping and saw fire from a gun muzzle come from the defendant's car. When the victim went to call the police the witness left the scene without giving any identification and was never located. There were bullet holes in the taillight, the rear bumper and the muffler of the victim's car.

The evidence on behalf of defendant came from a Mr. Klipp who had been a passenger in defendant's car on the night of the shooting and a friend of defendant's, both of whom testified that defendant was an excellent marksman.

Mr. Klipp also testified that the car of the victim had come upon them very swiftly from the rear with its bright lights on and swerved to the left and passed them, and that this car stayed in the left hand lane and made a left turn. Klipp, who was occupied in opening a can of beer with his hands outside the right window, turned to see defendant "blast a couple rounds out the window." He could not see the target at which the defendant was aiming. The defendant was engaged in rapid fire, i.e., the shots were fired as fast as the trigger could be pulled. He also testified that he saw shots come from the victim's car.

The trial court gave instructions on assault first degree, assault second degree and assault in the third degree. It also gave an instruction on self defense. The jury returned a verdict of guilty of assault in the first degree and he was sentenced by the court as a prior offender based upon a plea of guilty to carrying a concealed weapon § 558.016.2. The court in that case has suspended the imposition of sentence.

Defendant contends that the court erred in failing to give the instruction offered by him on assault in the third degree in lieu of the instruction on assault in the third degree that was given by the trial court and in so doing failed to submit his theory of the case.

The instruction given by the court reads as follows:

If you do not find the defendant guilty of assault in the first degree or assault in the second degree, you must consider whether he is guilty of assault in the third degree.

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about June 17, 1982, in the County of St. Louis, State of Missouri, the defendant attempted to cause physical injury to Steve Hughes by shooting at him and his moving vehicle, and

Second, that the defendant did not act in lawful self-defense, as submitted in Instruction No. 9, then you will find the defendant guilty of assault in the third degree.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

The instruction offered by defendant reads as follows:

If you do not find the Defendant guilty of assault in the second degree, you must consider whether he is guilty of assault in the third degree.

If you find and believe from the evidence beyond a reasonable doubt:

That on the 17th day of June, 1982, in the County of St. Louis, State of Missouri, the Defendant recklessly created a grave risk of death to Steve Hughes by shooting at his motor vehicle, then you will find the Defendant guilty of assault in the third degree.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the Defendant not guilty of that offense.

As defendant argues, he was entitled to an instruction on assault in the third degree, an included offense of assault in the first degree. As defined in § 556.046.1(1), an included offense is one "established by proof of the same or less than all the facts required to establish the commission of the offense charged." There must be "a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." § 556.046.2.

It was apparently defendant's theory, aside from self defense, that in shooting at the moving car with the victim in it, he did not intend to "kill or cause serious physical injury to the [victim]," as required in the instruction with respect to assault in the first degree. The instruction given by the

court on assault in the third degree required only that defendant attempted to do "physical harm" to the victim. It required a showing that one of the essential elements of the crime charged was lacking for there to be a conviction on the lesser included offense. *See State v. Wiggins*, 640 S.W.2d 161, 162 (Mo.App.1982). The instruction was in the form provided by MAI CR, 19.06.1, contains facts supported by the evidence that are necessary to a finding of guilty on the lesser charge.

 In the argument portion of the brief, defendant states, "The defendant's theory of the case was that, in an attempt to scare or frighten Mr. Hughes, defendant fired shots into the rear of Mr. Hughes' automobile." In other words, his theory was that he lacked specific intent to cause physical injury to the victim. The instruction offered by defendant does not cure this defect. If defendant had desired to submit that theory he was required to submit a converse instruction on that issue. *See* Missouri Bar Committee Comments on Missouri Approved Criminal Instruction, Assault, p. 11, and *State v. Chevlin*, 284 S.W.2d 563 (Mo.1955). We also note that the instruction offered by defendant is erroneous in that it fails to require a finding that defendant did not act in self defense.

The trial court properly refused the instruction offered by defendant.

Defendant's second point combines two related issues. He contends that the trial court erred in refusing to "quash" the testimony of the victim because the state failed to carry its burden of showing that a hypnotic session with the victim was not impermissibly suggestive and did not contaminate his testimony. He also contends that the court abused its discretion in failing to grant a continuance to permit him to investigate the circumstance under which the hypnotic session was held.

Defendant's counsel was notified four days before trial that the victim had undergone a hypnotic session. On the day of trial she filed a motion to "quash" the testimony of the victim. At the hearing on the motion counsel for the state told the court that the hypnosis was conducted for the purpose of determining whether the victim could recall anything that would lead to the identity of the witness who had spoken to him after the shooting as well as any other details of the incident, because this information was potentially useful in relation to another crime. The state also advised the court that the detective who witnessed the hypnosis was available to the defendant. Counsel of defendant, from a tactical point of view, declined to pursue the matter further taking the position that the state was required to show that the hypnosis had not tainted the testimony. The trial court denied the motion.

In the trial the victim testified with respect to the shooting incident and identified defendant as the person who did the shooting. He also testified that he had identified defendant from among five photographs on June 22, 1982, five days after the incident. On cross-examination the victim testified that he was hypnotized on July 8, 1982, but that he testified to facts he remembered and not some suggestion made during hypnosis.

Detective Ventimiglia testified that the victim identified defendant by photograph and gave a statement about the shooting incident before defendant was arrested on July 1, 1982; that he was present when the victim was being questioned during hypnosis and during that session the victim did not say anything inconsistent with what he told the detective before and added nothing to that information.

 The defendant made no objection to the testimony of the victim during the trial. There was nothing preserved for our review.

 No error was committed by the trial court in any case. The evidence in this case clearly demonstrated that the testimony of the victim was not tainted by any suggestions of the police or Dr. Lum who had hypnotized the victim. The victim had identified the defendant and given a statement more than two weeks before the hypnosis. His testimony contained nothing

more as a result of hypnosis. The trial court did not err in permitting the victim to testify. *State v. Little,* 674 S.W.2d 541, 544 (Mo. banc 1984).

 As to the request for a continuance we must rely upon the sound discretion of the trial court and we will not intervene unless there has been a blatant abuse of discretion. *State v. Williams,* 652 S.W.2d 102, 108 (Mo. banc 1983). In this case defendant has failed to demonstrate that he has been prejudiced by the action of the trial court.

Defendant's final point is the trial court erred in finding that he was a prior offender under § 558.016.2, RSMo Supp.1983, the consequence of which was to remove the sentencing from the jury and requiring the court to sentence him. He argues that at the time he entered his plea § 558.016 RSMo Supp.1980 was in effect and did not contain a provision for sentencing of a prior offender by the court rather than the jury. Defendant contends that § 558.016.2 RSMo Supp.1983 is an ex post facto law and violative of Art. I § 13 Constitution of Missouri.

The issue raised here has been effectively ruled adversely to defendant's contention by *State v. Acton,* 665 S.W.2d 618 (Mo. banc 1984) and *State v. LaPlant,* 673 S.W.2d 782 (Mo. banc 1984). It needs no further exposition here.

The judgment is affirmed.

SIMON, P.J., and STEPHAN, J., concur.